IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIA C. HERNANDEZ,

    Plaintiff,

v.                                                             14cv905 JCH/WPL

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Maria Hernandez applied for disability insurance benefits and supplemental security income on April 19, 2010, alleging disability beginning on January 14, 2010, from a right elbow fracture and depression. (Administrative Record "AR" 194-201, 223, 256.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on her Motion to Reverse or Remand and supporting brief, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Hernandez's reply. (Docs. 17, 17-1, 27, 30.) For the reasons explained below, I recommend that the Court deny Hernandez's motion and affirm the decision of the Commissioner.

**STANDARD OF REVIEW**

In reviewing the Administrative Law Judge's ("ALJ") decision, the Court must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted).

A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). The Court must meticulously examine the record but may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

**SEQUENTIAL EVALUATION PROCESS**

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016) & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e) (2016). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her

past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Hernandez is forty-nine years old. (AR 218.) She has an eleventh grade education and previously worked as a prep cook, bookkeeper, in retail sales, and as a disc jockey. (AR 43, 62, 224, 225.)

I do not address everything in the record but rather target my factual discussion to those facts necessary to provide a recommendation about this case.

On January 14, 2010, Hernandez fell and broke her right elbow after tripping on a rock in her front yard. (AR 53, 443.) That evening, she went to the emergency room at the Lea Regional Medical Center for treatment and was diagnosed with "Acute Fracture with Dislocation of: Right Elbow" and bruising. (AR 444.) The next month, on February 15, 2010, John Harmston, M.D., performed surgery on her right elbow and implanted a radial head prosthesis. (AR 440.) The implant later loosened, and Hernandez experienced significant pain. (AR 466, 519.)

Dr. Harmston performed a second surgery to reposition the prosthesis on August 30, 2010. (AR 537.) A few days after the surgery, on September 1, 2010, Hernandez returned to the emergency room at Lea Regional Medical Center for shortness of breath. (AR 520.) She was diagnosed with acute viral upper respiratory infection and acute anxiety. (AR 523.)

In the following months, Hernandez had four surgical follow-up appointments with Dr. Harmston. (AR 601-605.) At the first appointment, on September 9, 2010, Hernandez stated that she went to the emergency room on September 1 because "the nausea [from Lortab, her pain medication,] also caused her to have anxiety," that she "still felt very nervous," and that "[s]ince her surgery, she has not been able to leave her home." (AR 601.) At the second appointment, on September 22, 2010, Dr. Harmston noted that "[t]he patient continues to be very anxious in the office today," and reported that Hernandez said her anxiety was due to "worrying [about whether her arm] is going to work correctly [and] if it is going to end up the way it was after the 1st surgery." (AR 602.) Dr. Harmston recommended that Hernandez see Amanda McGraw, NP, "who [Hernandez] had seen in the past for primary care reasons," to treat her post-surgery "depression/anxiety." (AR 602.) At the third appointment, on October 20, 2010, Dr. Harmston noted that Hernandez "has become more active with her arm, [is] feeling less anxious, and has started exercising on her own." (AR 604.) At the fourth appointment, however, on November 17, 2010, Hernandez's anxiety returned. (AR 605.) Dr. Harmston noted that Hernandez said she had continued anxiety about potential problems with her elbow, despite "her x-rays look[ing] normal." (*Id.*)

Hernandez's referral appointment with McGraw for depression and anxiety occurred on October 1, 2010. (AR 653-656.) McGraw diagnosed, among other things, "ANXIETY STATE, UNSPECIFIED." (AR 656.) Hernandez had a second appointment with McGraw on December

1, 2010 (AR 651-653), where McGraw noted, among other things, "ONGOING ANXIETY." (AR 652.)

On December 13, 2010, Hernandez saw consultative psychologist Connie Jo Ponce, Psy.D., for an evaluation of her depression and anxiety. (AR 608-611.) Dr. Ponce diagnosed Hernandez with "Major Depression Disorder, Recurrent[,] Moderate" and assigned a Global Assessment of Functioning ("GAF") score of 50.[1] (AR 611.)

An unsigned, undated Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity Assessment ("MRFC") appear in the record. (AR 614-631.) Though the signature blocks are blank, both forms contain the letters "ACJ" below the findings (*see* AR 626, 630), which may be the initials of the medical source that completed them. The "CONSULTANT'S NOTES" section of the PRT mentions Hernandez's assessment by Dr. Ponce. (*See* AR 626 ("Claimant attended an MSCE [mental status consultative exam] on 12/13/10 . . . .").) The MRFC found that Hernandez "can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a work setting." (AR 630.)

On January 15, 2011, Eric Weiner, Ph.D., completed a Case Analysis and concluded that the "current PRTF/RFC in file is affirmed as written." (AR 632.) Dr. Weiner, therefore, considered the conclusions of both "ACJ" and Dr. Ponce.

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR 34* (4th ed., text rev. 2005). A score between forty-one and fifty is assessed when the patient is believed to have "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Dr. Ponce used this scoring method.

**ALJ and Appeals Council's Decision**

The ALJ issued her decision on September 10, 2012. (AR 45.) At step one, she determined that Hernandez had not engaged in substantial gainful activity since January 14, 2010. (AR 39.) At step two, she found that Hernandez had the severe impairments of "[s]tatus post right elbow radial head arthroplasty with elbow prosthesis and depression." (*Id.*) At step three, the ALJ concluded that Hernandez did not have an impairment or combination of impairments that met or medically equaled anything in the Listing of Impairments. (AR 40.) The ALJ noted that Hernandez had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with concentration, persistence or pace, and "no episodes of decompensation, which have been of extended duration." (*Id.*)

At phase one of step four, the ALJ determined that Hernandez had the RFC "to perform light work" with the following limitations:

> "she can never climb ladders, ropes or scaffolds and can perform only occasional fully extended or overhead reaching with her right upper extremity[;] can perform frequent as opposed to constant handling of objects[;] should avoid moderate exposure to vibration, moving machinery and unprotected heights[; and] due to her symptoms of depression . . . is limited to simple, routine, repetitive tasks and only occasional social interactions with the public.

(AR 41.) In making this determination, the ALJ found Hernandez "not credible" to the extent her subjective complaints differ from the RFC, noted that "there are no medical records in the file to document ongoing psychiatric treatment or counseling for her symptoms [of anxiety and depression]," discussed but did not explicitly weigh the medical opinion of Connie Jo Ponce, Psy.D., and gave "[s]ignificant weight . . . to the opinions of the State Agency medical consultants who completed mental and physical residual functional capacity assessments and also found the claimant capable of at least a limited range of light work." (AR 42-43.)

At phases two and three of step four, the ALJ determined that Hernandez "has past relevant work in retail sales . . . [and] bookkeeping," but concluded, "[b]ased on the testimony" of a vocational expert, that "the claimant is no longer capable of performing any of her past relevant work." (AR 43.)

Proceeding to step five, the ALJ heard testimony from the vocational expert and found that Hernandez could perform other jobs existing in significant numbers in the national economy and was not disabled. (AR 44-45.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1.)

## DISCUSSION

Hernandez argues that the ALJ "both failed to state the weight she accorded Dr. Ponce's opinions" and "implicitly rejected Dr. Ponce's opinions about Ms. Hernandez's limitations." (Doc. 17-1 at 20.) The Commissioner concedes that "the ALJ did not explicitly assign weight to Dr. Ponce's opinion" but argues that "the error is harmless because the ALJ fully assessed Dr. Ponce's opinion and there is no conflict between the residual functional capacity and Dr. Ponce's opinion." (Doc. 27 at 7.)

"It is the ALJ's duty to give consideration to all the medical opinions in the record" and "discuss the weight [s]he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c),(e), 416.927(c),(e)). "[I]n addition to discussing the evidence supporting h[er] decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

Failure to meet the two requirements mentioned in *Keyes-Zachary*—considering and explicitly weighing each medical opinion—constitutes error, but in certain circumstances, the

7

error is harmless. *See generally Keyes-Zachary*, 695 F.3d 1156. In *Keyes-Zachary*, the claimant argued that the ALJ erred by failing to consider the medical opinions of two doctors and failing to explicitly weigh five medical opinions. *Id.* at 1161-1166. The Tenth Circuit found all errors harmless, concluding that the two omitted medical opinions did not undermine the ALJ's RFC, and the lack of explicit weight for the five medical opinions caused no prejudice because assigning greater weight to the opinions would not have changed the result. *Id.*

I analyze Hernandez's second claim of error first. She argues that Dr. Ponce's report contains eight "specific opinions" about Hernandez's functioning, but the ALJ only considered two. (*See* Doc. 17-1 at 18-19.) Hernandez argues that the eight opinions discussing her limitations are:

> (1) [s]he would have no specific problems understanding instructions but 'would appear to have problems persisting at tasks of basic work due to psychological issues'; (2) she has a limited ability to adapt to changes; (3) she has problems managing stress; (4) she has problems managing anger; (5) she has problems with depressed mood, initiating tasks, and poor motivation; (6) she isolates herself; (7) she has hypersomnia (excessive daytime sleepiness); and (8) she has experienced 'a significant change in functioning as she is no longer active and often stays in her pajamas all day.' (Tr. at 610.)

*Id.*

Review of Dr. Ponce's report, however, reveals that four of these alleged opinions do not qualify as medical opinions, and two of these alleged opinions are contradicted by other opinions in Dr. Ponce's report.

Numbers (5), (6), (7), and (8) do not qualify as medical opinions because they are summaries of Hernandez's subjective complaints. (*See* AR 610.) Two circumstances in Dr. Ponce's report support this conclusion. First, these numbers appear in a section titled: "SUMMARY/RECOMMENDATIONS." (*Id.*) Second, Dr. Ponce prefaced numbers (5), (6), and (7) with phrases to indicate that Hernandez supplied the information. (*See id.* ("She reported . . . .

She also reported . . . . She also described . . . .").) Number (8) does not contain a prefatory clause, but one can conclude that Hernandez provided the information, because the record does not indicate that a medical source observed Hernandez's activity level or household clothing choices.

Two other circumstances also suggest that numbers (5), (6), (7), and (8) are not medical opinions that require evaluation. First, the Tenth Circuit has noted that an ALJ need not consider a claimant's subjective complaints when assigning weight to a medical source's opinion. *Keyes-Zachary*, 695 F.3d at 1164 ("The ALJ was not required to assign a weight to [a medical provider's] narrative of statements relayed to him by [the claimant]."). Second, the ALJ found Hernandez's statements "not credible to the extent they are inconsistent with the [RFC]" (AR 42), and Hernandez did not challenge the finding (*see* Doc. 17-1). This means that the ALJ could properly disregard the four subjective complaints because they were offered by a less than credible claimant.

Numbers (3) and (4) do not merit significant consideration because they are undermined by other, contradictory opinions in Dr. Ponce's report. Specifically, Dr. Ponce noted that "Ms. Hernandez does not present with any significant social limitations" and "does not exhibit any difficulties cooperating with others." (AR 610.) Taken together, Dr. Ponce appears to conclude that Hernandez has problems managing stress and anger but would be a friendly and cooperative employee. Given this contradiction, numbers (3) and (4) do not qualify as "uncontroverted evidence" or "significantly probative evidence" that *Clifton* mandates an ALJ discuss to avoid error. *See* 79 F.3d at 1010.

The question then becomes whether the ALJ's failure to discuss opinions (1) and (2) undermines the RFC. Because they do not, there is no error.

Opinions (1) and (2) do not undermine the RFC because they are vague and do not translate into discrete workplace limitations. The Tenth Circuit addressed a similar circumstance in *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). There, the ALJ wrote that the treating physician's opinion was "generic and did not accurately assess plaintiff's true functional capabilities." *Id.* at 1214. The Tenth Circuit agreed and found "no error" because the treating physician's conclusion that the claimant had "'[s]evere limitations' [did] not indicate exactly what [the claimant] c[ould] do in relation to the physical exertional requirements of sedentary, light, moderate, or heavy work." *Id.* at 1214.

The facts in *Bean* differ slightly—the claimant there alleged physical limitations rather than mental limitations, like Hernandez—but the same reasoning applies. Here, Dr. Ponce used the word "problems" to describe the challenges that Hernandez may encounter in a work environment. (AR 610.) "Problems" is more vague and less restrictive than the phrase "severe limitations" at issue in *Bean*. And, like in *Bean*, a functional capacity evaluation was the best place to distill discrete workplace limitations. Here, the unknown agency consultant—"ACJ"— completed a MRFC and found Hernandez capable of light work. (AR 628-630.) Dr. Weiner affirmed the assessment (AR 632), and the ALJ afforded it "[s]ignificant weight" (AR 43)—a finding that Hernandez does not challenge (*see* Doc. 17-1). In sum, the ALJ relied on an unchallenged MRFC to craft her RFC, and Dr. Ponce's conclusions about Hernandez's workplace challenges do not undermine the RFC because they are even more imprecise than in *Bean*.

Hernandez makes much of the ALJ's failure to discuss the GAF score of 50 that Dr. Ponce assigned. (*See* Doc. 17-1 at 20-21.) Her most compelling case citation, however—*Lee v. Barnhart*—addressed a different situation and is inapplicable. *See* 117 F. App'x 674, 678 (10th

Cir. 2004) (unpublished) ("In a case like this one, decided at step two, the GAF score [of 48] should not have been ignored.").

The Commissioner, on the other hand, cites three cases that are more pertinent. (*See* Doc. 27 at 11-12.) In one case, for instance—*Eden v. Barnhart*—the Tenth Circuit noted that "[n]o one who rated [the claimant's] GAF [of 50] indicated that [the claimant] could not work." 109 F. App'x 311, 314 (10th Cir. 2004) (unpublished). The ALJ noted the same circumstance here. (*See* AR 43 ("I note that no treating or examining physician has offered the opinion that [Hernandez] is disabled.").) In *Eden*, the Tenth Circuit went on to hold that "[b]ecause a score of 50 may not relate to [the claimant's] ability to work, the score, standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities." 109 F. App'x at 314. The same reasoning applies here because no medical source connected Hernandez's GAF score of 50 to an inability to work.

As for Hernandez's first claim of error—that the ALJ failed to explicitly weigh Dr. Ponce's opinion—the ALJ erred, but the error is harmless because assigning explicit weight would not have changed the result. *See Keyes-Zachary*, 695 F.3d at 1161-1166.

## CONCLUSION

The ALJ erred by failing to consider two of Dr. Ponce's opinions, but the opinions do not undermine the ALJ's RFC, so the error is harmless. The ALJ also erred by failing to assign explicit weight to Dr. Ponce's opinion, but the error is likewise harmless, because it would not have changed the result.

I recommend that the Court deny Hernandez's Motion to Reverse or Remand and affirm the decision of the Commissioner.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*/s/ William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE